■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL HUTSON, Appellant.—Judgment, Supreme Court, New York County (Herbert Altman, J.), rendered September 10, 1987, convicting defendant, after a jury trial, of attempted murder in the second degree and sentencing him as a predicate felon to an indeterminate prison term of from 12½ to 25 years, unanimously affirmed.

On the afternoon of November 12, 1986, defendant brought his two-year-old daughter to the home of his ex-girlfriend, Kimberly Floyd. The daughter was the offspring of another woman. Defendant told Floyd that he did not love his daughter and threw the child to the floor and left the apartment. Defendant returned and asked if Floyd would consider reviving their relationship. Floyd said it would not work. Defendant announced that he was going to throw his daughter off the roof. Floyd followed defendant to the roof and saw him throw his daughter off. (Floyd originally told the Grand Jury that she left to find her mother and did not follow defendant up to the roof.) The daughter fell five stories and survived with severe injuries. Defendant fled from the roof by way of the fire escape in the rear of the building. Several witnesses saw defendant flee. After a brief investigation, defendant was arrested and indicted.

Defendant moved to dismiss the indictment on the ground that Ms. Floyd had given perjurious testimony to the Grand Jury. The motion was denied. The only notable deviation before the Grand Jury was that Ms. Floyd did not mention that she followed defendant to the roof and saw him throw his daughter off. First, there is nothing in the record to indicate that there had been a knowing use of perjured testimony by the prosecutor. Second, dismissal is not warranted here since this information would not have "materially influence[d]" the Grand Jury. (People v Bartolomeo, 126 AD2d 375, 395 [2d Dept 1987].)

In fact, the petit jury was aware that Ms. Floyd told the differing story to the Grand Jury, and despite this, they concluded that the People's proof met the even higher standard required for conviction. Here, the change in testimony reflected on the witness's credibility, which was a matter appropriately reserved for the petit jury (People v Suarez, 122 AD2d 861 [2d Dept 1986]). Hence, the defendant was not prejudiced by the fact that Ms. Floyd did not inform the

Grand Jury that she was an eyewitness to the incident. (CPL 210.35 [5]; *People v Di Falco,* 44 NY2d 482, 487 [1978].) In fact, this information was far more inculpatory than exculpatory.

Despite the fact that defendant asserts that his guilt of attempted murder was not proven, the evidence was sufficient to support his guilt beyond a reasonable doubt. The jury reasonably determined that Floyd was initially reluctant to admit that she had been on the roof but then resolved to tell the truth. *(People v Wood,* 94 AD2d 814 [3d Dept 1983].) In addition, Trial Term afforded the defense wide latitude in the cross-examination of Floyd. It was not an abuse of discretion to refuse to permit the defense to recall Floyd to the stand. *(See, People v Simpson,* 109 AD2d 461, 464 [1st Dept 1985].) Concur—Kupferman, J. P., Ross, Milonas, Rosenberger and Ellerin, JJ.