OPINION OF THE COURT
Joseph G. Golia, J.
Defendant moves, at the commencement of his jury trial, for *1034 this court to reinspect the Grand Jury minutes and dismiss the indictment.
The defendant herein is charged with murder in the second degree and criminal possession of a weapon in the second degree. He alleges that his indictment was improperly secured by virtue of the fact that the Assistant District Attorney failed to inform the Grand Jury that there was a cooperation agreement made by the District Attorney’s office with a People’s witness. In addition, the defendant now maintains that the Grand Jury was not charged as to the legal requirement of corroborative evidence, pursuant to CPL 60.22.
The People submit opposing papers which assert that the jury was properly advised as to corroboration, and while acknowledging that they did not inform the jury of the cooperation agreement, assert that they are under no obligation to inform the Grand Jury of such an agreement.
Upon the case being presented to the Grand Jury, People’s witness Ernesto Piniella, who allegedly planned the murder, testified that he was the chief of the security force of a major drug gang and that he would, from time to time, assassinate individuals upon the orders of his superiors. In particular, he testified that he received orders from his superiors to have James Green, the victim herein, assassinated. He went on to state to the Grand Jury that Charles Gallman, the defendant, was one of the men involved in the killing and that he was present in a van used to transport the team of "hit” men to the place of execution.
After waiting unsuccessfully for the victim to exit his house, Mr. Gallman volunteered to bring Mr. Green outside of his house for the purpose of being shot. The defendant did bring the victim outside, at which point another man left the van, went up to the Green residence, and shot Mr. Green.
Although there are many other witnesses who place the defendant at the scene of the murder, there is no other evidence which would tend to connect him with the shooter.
It is conceded that in order to secure Mr. Piniella’s testimony the District Attorney entered into a cooperation agreement which, in effect, granted immunity to Piniella for certain prior crimes and limited his jail exposure for his current arrest. No mention of this agreement was made to the Grand Jury during the presentation of the case.
The defendant maintains that the District Attorney had a duty to advise the Grand Jury as to the nature and contents *1035 of the cooperation agreement. This, in turn, would have served to impeach the witness’s credibility to such an extent as to nullify the case against the defendant. He therefore concludes that the District Attorney’s action in concealing this agreement was so prejudicial as to require dismissal of the indictment.
It is undeniable that the District Attorney’s office entered into a cooperation agreement which limited jail exposure to this self-confessed, cold-blooded murderer in exchange for his testimony.
Does the mere existence of such an agreement require an absolute disclosure to the Grand Jury as this defendant contends?
The answer is "no”.
In People v Bartolomeo (126 AD2d 375, lv denied 70 NY2d 702), the Grand Jury was never specifically informed by the prosecution of the agreements made with witnesses. The defendant appealed his conviction and the Appellate Division, Second Department, having considered this issue, ruled that, "The fact that the Grand Jury was not informed of the promises of immunity * * * does not affect the validity of the proceedings since such evidence merely related to the witnesses’ credibility” (supra, at 396). The Appellate Division, relying upon People v Holmes (118 AD2d 869), pointed out that, "[ujnless a prosecutor withholds evidence which would materially influence Grand Jury investigation, the proceedings will not be invalidated”. (People v Bartolomeo, supra, at 395.)
Thus, I begin with the premise that the law imposes no absolute duty on the part of the District Attorney to reveal the existence of a cooperation agreement to the Grand Jury. Notwithstanding the above, if a cooperation agreement would in some way materially influence the Grand Jury, would disclosure then be required?
The answer is "possibly”.
It is important to keep in mind that a District Attorney is obligated "to conduct all prosecutions for crime” (County Law § 700 [1]) and enjoys broad discretion "in determining when and in what manner to prosecute a suspected offender” (People v Di Falco, 44 NY2d 482, 486). The Legislature extended this authority by statute to include Grand Jury proceedings (CPL art 190) and to permit the District Attorney to determine what witnesses are presented "to that body and who should be excluded” (see, People v Di Falco, supra, at 487).
*1036 The power to present witnesses, by implication, grants the District Attorney authority to enter into cooperation agreements; since without this right witnesses may be less inclined to testify, as, for example, is their Fifth Amendment privilege. To force the District Attorney to automatically disclose such negotiations to a Grand Jury might jeopardize other investigations and/or tend to restrict the People’s power to prosecute as they see fit.
The Bartolomeo case (supra) did not bar disclosure at the Grand Jury level; it simply held that such disclosure was not necessary at that stage. It did, however, point out that disclosure might be necessary if the withholding of such evidence would materially influence the Grand Jury’s investigation. Although there have not been many cases exploring this "materially influence” exception, there are some that have touched on this issue.
In People v Warmus (NYLJ, Aug. 8, 1990, at 21, col 6), a nisi prius court held that the concealment of an immunity agreement, coupled with the failure on the part of the District Attorney to reveal a witness’s prior inconsistent statements, misled the Grand Jury to such an extent as to impair their basic function. That court dismissed the underlying indictment.
Similarly, in People v Sorenson (NYLJ, Oct. 2, 1991, at 29, col 4), that court found that a "private” understanding with a key witness that his cooperation would be taken into account on a pending arson charge negated a "public” waiver and affected his testimony. These circumstances may well have influenced the outcome of the Grand Jury proceeding. The court, citing People v Di Falco (supra), then dismissed the indictment on the theory that there was the possibility of prejudice.
People v Corso (129 Misc 2d 590, revd on other grounds 135 AD2d 551) stated, by way of dicta, that under certain circumstances deliberate concealment of an immunity agreement could mislead a Grand Jury into thinking that the witness could be prosecuted for a homicide, would be prosecutorial abuse which must result in a dismissal of the indictment.
A careful analysis of these cases leads us inexorably to the creation of a two-prong test. Simply put, a District Attorney would have a duty to disclose the existence of a cooperation agreement to the Grand Jury if: 1) the witness’s testimony is vital and not cumulative; and, 2) the failure to present credi *1037 bility evidence, i.e., the cooperation agreement, is so material to the case as to constitute a deception of the Grand Jury.
If this two-prong test is met, the cases then seem to hold that a failure to reveal the existence of such an agreement results in deception to the Grand Jury and prejudice to the defendant, thereby requiring dismissal of the indictment.
Applying the test as enunciated to the present case, I find that the first prong was met in that the subject witness’ testimony was most certainly vital. Specifically, it was the only evidence that linked the defendant to the criminal activity.
The second prong of the test is more vexing. That is, was informing the Grand Jury of the existence of the cooperation agreement so important as to materially influence their view as to the witness’ credibility?
In considering this point, I note that the Bartolomeo court relied, in part, on the holdings in People v Holmes (supra), and People v Thompson (108 AD2d 942). Those cases dealt with the District Attorney’s obligation to inform the Grand Jury of specific items of evidence which were exculpatory in nature. In Holmes, it was a prior inconsistent statement made by a witness, and in Thompson, it was the absence of a policeman’s handwritten notes.
While it is to be noted that the purpose of informing a jury of the existence of an immunity agreement is to challenge that witness’ credibility (see, People v Bartolomeo, supra), that issue is usually reserved for the trial court (People v Hutson, 157 AD2d 574; People v Suarez, 122 AD2d 861).
Credibility has been defined as "worthiness of belief; that quality in a witness which renders his evidence worthy of belief’ (Black’s Law Dictionary 366 [6th ed]). Although this quality of credibility, unlike mercy, may often be strained, it is normally left to be explored at trial where a full examination can be held.
In examining what negative evidence the People should be required to present, I see a distinction between exculpatory evidence and credibility evidence. Exculpatory evidence, by its nature, is "so compelling as to legally cause the Grand Jury to consider an alternate action” (People v Filis, 87 Misc 2d 1067, 1069). Such evidence is usually one definite statement or item, so vital that its absence denies the Grand Jury a complete picture of the alleged criminal act. Credibility evidence, on the *1038 other hand, is broader in scope, circumstantial in nature, and therefore may be established in numerous ways.
With this distinction observed, I can now address the second prong of the test.
The record indicates that the People’s witness testified in the Grand Jury that he was the head of a security force, employed by a Queens County drug gang. He admitted that he "took care” of killings for that group. He also acknowledged being the overseer of the narcotics, as well as the people who sold those narcotics. Further, the witness stated that he was involved in the very homicide at issue, having planned the details, gathered the killing crew (including the defendant herein), and utilized a van for transportation.
Based on such testimony, the grand jurors had ample reason to question that quality of the witness’ testimony, the sufficiency of which "renders his evidence worthy of belief’. His testimony regarding murderous activities and the ruthlessness of his involvement in the instant crime, gave the Grand Jury ample grounds to suspect this witness’ credibility. Thus, if the Assistant District Attorney had told the deliberating body of the cooperation agreement, it could only have had a cumulative effect and not a material one. To hold otherwise would be ludicrous and would suppose that a Grand Jury would not suspect that a confessed murderer may not always tell the truth.
In summary, although the Grand Jury was not advised of the cooperation agreement, this fact was compensated by the presentation of other equally strong testimony which clearly put in issue the witness’ credibility. This being the case, the lack of that information was not of such major import as to affect the Grand Jury’s view concerning the defendant’s credibility. Hence, no deception was practiced by the District Attorney’s office.
Had the People’s witness come from a more sedate and less ominous background, and therefore gave the Grand Jury no cause to doubt the witness’ veracity, then the silence of the Assistant District Attorney would have concealed a relevant item of evidence which may well have been the only factor which could have swayed the Grand Jury’s belief in the witness’ credibility. This clearly would have constituted a manner of deception. Since this is not the case here, the application to dismiss the indictment on the ground of failure to inform the Grand Jury of the existence of a cooperation *1039 agreement lacks legal merit and furnishes no basis for a dismissal.
Briefly, defendant’s other challenge is that the indictment is based soley on the testimony of an accomplice and must therefore be dismissed due to the lack of corroborative evidence.
The record in this regard indicates that the Assistant District Attorney produced sufficient proof to satisfy "the tending-to-connect” requirement mandated by statute. This proof took the form of several witnesses who placed the defendant at the scene of the crime and described his actions towards the victim as he tried to speak. This being so, there was sufficient evidence to satisfy corroboration of an accomplice’s testimony, as required by CPL 60.22.
I further find that the Grand Jury was properly advised as to the necessity of such corroborative evidence.
Accordingly, the application to dismiss the indictment based on the failure of the Assistant District Attorney to advise the Grand Jury as to the existence of a cooperation agreement and a lack of corroboration testimony is denied in all respects.