■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES MARIANI, Appellant. [610 NYS2d 967] —Crew III, J. Appeal from a judgment of the Supreme Court (Keegan, J.), rendered October 20, 1992 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and burglary in the first degree (two counts).

On May 15, 1986, at approximately 10:00 P.M., Jake Cohn and Dora Cohn were murdered in their home in the Town of Colonie, Albany County. The victims had sustained bullet wounds to the head from a .25-caliber handgun. The investigating officers found signs of a forced entry and the victims' son testified that his mother's pocketbook was missing, as well as a metal box in which his father kept valuable coins. An ongoing investigation failed to reveal evidence of the perpetrators until 1990 when Frederick Paqua, a convicted felon, contacted the police with incriminating admissions he had recently received from defendant, the victims' grandson, while they were incarcerated together in a State correctional facility. As the result of further investigation, defendant, Robert Skinner and Keith Snare were indicted for, *inter alia*, burglary in the first degree and felony murder. Following a jury trial, the three were convicted of burglary and murder, defendant's liability being predicated upon accessorial conduct.

On this appeal, defendant contends, *inter alia*, that there was insufficient evidence to support a finding that he was guilty, as an accessory, of the underlying felony of burglary and, consequently, the verdicts must be reversed. In particular, defendant urges that the record evidence demonstrates, at best, that he had knowledge that the burglary was to take place, but not that he solicited, requested or aided Skinner and Snare in the commission thereof and, thus, he cannot be deemed liable through accessorial conduct *(see, People v Valerio,* 64 AD2d 516). We disagree.

At the trial, Mark Torra testified that he had intended to participate in the burglary of the Cohns' home with Skinner and Snare but declined to do so when he discovered that Skinner was taking a .25-caliber handgun with him. Torra further testified that within hours of the time Skinner and Snare left to effectuate the burglary, they returned to his apartment with money and a metal box containing coins that were taken from the Cohns' home and that Snare said that

"something went wrong—somebody got hurt very bad". Additionally, Torra testified that defendant came to his home the next day and confronted Skinner and Snare, stating, "I can't believe you guys did that shit. It wasn't supposed to happen like that. I can't believe you did this. Why did you have to do it? It didn't have to be done." Finally, Torra testified that several weeks later defendant asked him to sell some coins for him, stating, "You know where they came from." Paqua testified that defendant stated, "I told them plenty of times to make sure no one gets hurt." Paqua further testified that defendant told Skinner and Snare that his grandparents always kept money, that his grandfather was good for "a couple of thousand". Of note, on cross-examination Paqua was asked, "Are you telling this jury that [defendant] three years and nine months after the murder of his grandparents decided in the middle of the night to tell you that he participated in it?", to which Paqua answered, "Yes." To be sure, the statements attributable to defendant do not demonstrate, per se, that he assisted Skinner and Snare in the burglary of his grandparents' home, but it is clearly inferable that he did so, thus presenting a question of fact for the jury to determine (see, People v Swersky, 216 NY 471). Indeed, it is axiomatic that where competing inferences may be drawn from the evidence, so long as they are not unreasonable, they are within the exclusive domain of the finders of fact (see, People v Barnes, 50 NY2d 375, 381). We also reject defendant's contention that the evidence adduced at trial does not exclude to a moral certainty every reasonable hypothesis except that of guilt (see, supra, at 380-381). That strict standard is only applicable to cases founded solely upon circumstantial evidence (see, People v Way, 59 NY2d 361, 365). Here, defendant's admissions testified to by Paqua and Torra constituted direct evidence (see, People v Hill, 188 AD2d 949, 951).

We likewise reject defendant's contention that the People failed to corroborate Torra's testimony. The evidence necessary to corroborate an accomplice's testimony need only connect the defendant to the crime so as to reasonably satisfy the jury that the accomplice was truthful (see, People v Williams, 195 AD2d 889, 891, lv denied 82 NY2d 808). Clearly, the testimony of Paqua corroborated Torra's testimony. Additionally, the testimony of the Cohns' son that his father's metal box containing rare coins was missing corroborated Torra's testimony.

Contrary to defendant's assertions, our review of the record satisfies us that the evidence adduced was legally sufficient to

establish each element of the crimes charged and, after considering the probative force of the testimony and the varying inferences that could be drawn therefrom, that the verdict was not against the weight of the evidence (see, People v Bleakley, 69 NY2d 490, 495).

Next, we reject defendant's contention that the indictment should be dismissed because of the impairment of the integrity of the Grand Jury proceedings (see, CPL 210.35 [5]; see also, People v Darby, 75 NY2d 449). Defendant's principal contention is that four of the 26 Grand Jury witnesses perjured themselves and their perjured testimony sufficiently tainted the proceedings as to require dismissal. We disagree.

Initially, we note that one of the complained-of witnesses, Lori Rue, did not testify before the Grand Jury. As to Danielle Van Wagner's testimony, she did not incriminate defendant; her testimony was directed at Skinner. The testimony of Janice Miller that was subsequently recanted dealt with an unrelated burglary in which defendant was allegedly involved. Given that there is no proof or, indeed, even an allegation that the prosecutor knowingly offered perjured testimony, the testimony elicited from Van Wagner and Miller can hardly be considered of such import as to have materially influenced the Grand Jury (see, People v Hutson, 157 AD2d 574, lv denied 75 NY2d 967). Finally, with regard to the fourth witness, David Coons, he testified as to certain incriminating conversations he had with defendant while they were incarcerated in the Schenectady County Jail. Coons also testified to an incriminating conversation he had with Skinner which implicated defendant. The record indicates that the prosecutor withdrew Coons as a trial witness when he learned that Coons was incarcerated at the time of the alleged conversation with Skinner and that the conversation could not, therefore, have taken place at the time and location testified to by Coons. Because Coons did not testify at trial, it is impossible to determine from the record before us whether Coons actually perjured himself or was merely mistaken as to the date the conversation took place. In any event, we note that there was ample additional evidence before the Grand Jury to support the elements of the crimes charged (see, People v Goetz, 68 NY2d 96, 117). We have considered defendant's other contentions regarding the Grand Jury proceedings and find them to be without merit.

Lastly, defendant claims that the prosecutor committed reversible error when, during his opening statement, he alluded to the expected testimony of Coons, who he subsequently failed to produce. We disagree. Initially, we note that

defendant did not request a mistrial and thus has not preserved the issue for our review *(see, People v De Tore,* 34 NY2d 199, 208, *cert denied sub nom. Wedra v New York,* 419 US 1025).* In any event, it is well known that prosecutors make representations in opening statements that later are incapable of proof and in the absence of bad faith or undue prejudice, they will not result in reversible error *(supra,* at 207). Here, Supreme Court properly instructed the jury that the comments of the attorneys were not evidence, and although Coons was supposed to testify concerning defendant's admission to him regarding his involvement in the burglary, Paqua's testimony served to fulfill that purpose. Accordingly, we do not perceive any undue prejudice to defendant.

Cardona, P. J., Casey, Weiss and Peters, JJ., concur. Ordered that the judgment is affirmed.