People v Watson (2020 NY Slip Op 03050)





People v Watson


2020 NY Slip Op 03050


Decided on May 28, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 28, 2020

109871

[*1]The People of the State of New York, Respondent,
v
Kashawn Watson, Appellant.

Calendar Date: March 24, 2020

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ.


Paul J. Connolly, Delmar, for appellant.
David J. Clegg, District Attorney, Kingston (Tracy Steeves of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered October 10, 2017, upon a verdict convicting defendant of the crimes of attempted robbery in the first degree (two counts) and criminal possession of weapon in the second degree (two counts).
In 2016, defendant and another individual, both of whom were wearing masks, entered and attempted to burglarize a home in the City of Kingston, Ulster County. Following an investigation of this home invasion, masks, among other things, were found in a nearby abandoned car. DNA testing revealed that defendant was a significant contributor for one of the masks. Defendant was thereafter arrested and charged in an indictment with multiple crimes. Prior to trial, defendant moved to suppress the buccal swab provided to law enforcement officials, but this motion was denied. A jury trial was held, after which defendant was convicted of two counts of attempted robbery in the first degree and two counts of criminal possession of a weapon in the second degree. County Court sentenced defendant to four concurrent prison terms of 15 years, each of which was to be followed by five years of postrelease supervision. Defendant appeals. We affirm.
Defendant argues that the verdict was not supported by legally sufficient evidence or, in the alternative, was against the weight of the evidence. In particular, he argues that the evidence was insufficient to identify him as one of the perpetrators. At trial, the People adduced proof that two men were in a house one early morning looking for money. One of the perpetrators had a gun and the homeowner recognized him. The homeowner did not recognize the other male perpetrator but stated that he had darker skin compared to the gunman. As the homeowner's younger brother fought with the gunman, the other perpetrator used a stun gun on him and then tied his hands with zip ties.[FN1] The girlfriend of the homeowner's son, who was staying at the homeowner's house at the time, was awoken after hearing screaming. The girlfriend stated that she observed two black males wearing masks, one of which had short braids and was holding the stun gun. The girlfriend then saw the two males fighting with the older brother and passing the stun gun between them as they struck him with it. As the three of them rolled down the stairs, the handgun went off. After hearing a gunshot, the homeowner saw the two males, who were both wearing black clothing, run away.
A police officer with the City of Kingston Police Department testified that he responded to the homeowner's home and, while at the scene, he received a call about a Hyundai Tucson blocking a person's driveway, which was a few blocks from the crime scene. He went to the Tucson and a loaded handgun and a stun gun were found therein. A detective with the same police department testified that the shape of the bruises on the older brother were consistent with the stun gun. A forensic scientist testified that, after test firing the handgun, the shell casing found in the homeowner's home matched the handgun. In addition, black ski masks, a black sweatshirt and zip ties were found in the Tucson. DNA testing was conducted and defendant was found to be a major contributor on one of the ski masks. Furthermore, the People introduced a photograph of a text message that was sent to defendant's girlfriend shortly before the incident in question depicting a selfie of defendant wearing a black sweatshirt. The People also adduced testimony indicating that the cell phone that was used to send defendant's girlfriend the selfie was the same phone that was used to place a call to the owner of the Tucson prior to the occurrence of the crimes at issue.[FN2] When the gunman was apprehended several hours after this incident, defendant was with him.
Viewing the foregoing evidence in the light most favorable to the People, a valid line of reasoning and permissible inferences exist that could lead a rational juror to conclude that defendant was one of the perpetrators (see People v Johnson, 38 AD3d 1012, 1013 [2007]; People v Moore, 29 AD3d 1077, 1078 [2006]). Accordingly, defendant's legal sufficiency contention is without merit. Regarding defendant's weight of the evidence claim, a different result would not have been unreasonable given that none of the witnesses positively identified defendant as a perpetrator (see People v Parker, 127 AD3d 1425, 1427 [2015]; People v Lewis, 287 AD2d 888, 889 [2001], lvs denied 97 NY2d 684 [2001], 97 NY2d 756 [2002]). Nevertheless, viewing the evidence in a neutral light and weighing the relative probative force of conflicting testimony and the strength of conflicting inferences that may be drawn from such testimony, we are satisfied that the jury's determination that defendant was one of the perpetrators is supported by the weight of the evidence (see People v Ackerman, 173 AD3d 1346, 1350 [2019], lv denied 34 NY3d 949 [2019]; People v Young, 152 AD3d 981, 982 [2017], lv denied 30 NY3d 955 [2017]; People v Curtis, 42 AD3d 824, 825 [2007]).
Defendant also contends that the grand jury proceeding was impaired, thereby requiring dismissal of the indictment. The dismissal of an indictment under CPL 210.35 (5) is an exceptional remedy and should be ordered only where there is "prosecutorial wrongdoing, fraudulent conduct or errors [that] potentially prejudice the ultimate decision reached by the [g]rand [j]ury" (People v Huston, 88 NY2d 400, 409 [1996]; see People v Wilkinson, 166 AD3d 1396, 1397 [2018], lv denied 32 NY3d 1179 [2019]). Although a detective gave inaccurate testimony at the grand jury proceeding, there is no indication that the prosecutor knew that it was inaccurate when given. Furthermore, our review of the grand jury proceeding reveals additional evidence to support the charged crimes and, as County Court found, any error did not impair the proceeding (see People v Hotaling, 135 AD3d 1171, 1172 [2016]; People v Andrews, 274 AD2d 835, 836-837 [2000], lvs denied 95 NY2d 960, 961 [2000]; People v Mariani, 203 AD2d 717, 719 [1994], lv denied 84 NY2d 869 [1994]). To the extent that defendant challenges the instructions given during the grand jury proceeding, such challenge is precluded given our determination herein that the conviction is supported by legally sufficient evidence (see People v Urtz, 176 AD3d 1485, 1490 n 7 [2019], lv denied 34 NY3d 1133 [2020]; People v Henry, 173 AD3d 1470, 1480 [2019], lv denied 34 NY3d 932 [2019]).
We reject defendant's claim that County Court erred in denying his suppression motion. Although defendant contends that the police officers could not compel him to go to the police station after he was seen with the gunman hours after the home invasion, the testimony from the suppression hearing reflects that he voluntarily agreed to do so. Furthermore, when he was taken to the police station, defendant was not placed in handcuffs. The record also reflects that the interview room at the station where defendant was situated was not locked and defendant was not handcuffed therein. Defendant was asked if he felt free to leave, to which he responded affirmatively. When defendant was asked to provide a buccal swab, he likewise agreed to do so (see People v Dallas, 119 AD3d 1362, 1363 [2014], lv denied 24 NY3d 1083 [2014]). Based on the totality of the circumstances, we find that defendant consented both to being taken to the police station and to submitting to a buccal swab (see People v Kluge, 180 AD3d 705, 708 [2020]; People v Brinkley, 174 AD3d 1159, 1163 [2019], lv denied 34 NY3d 979 [2019]; see generally People v Gonzalez, 39 NY2d 122, 128-130 [1976]). As such, defendant's suppression motion was correctly denied.[FN3]
Defendant asserts that, under the best evidence rule, the cell phone video recording of surveillance video that depicted the exterior of the bar where the owner of the Tucson was working, as well as the observations of the detective who viewed and recorded this cell phone video, should have been precluded. Defendant further asserts that the detective should not have been allowed to testify about what he saw on a surveillance video showing the inside of the bar. In overruling defendant's objection, County Court noted that the best evidence rule applied only to writings. Contrary to the court's reasoning, however, the best evidence rule can apply to videos (see e.g. People v Cyrus, 48 AD3d 150, 159 [2007], lv denied 10 NY3d 763 [2008]). Furthermore, the People did not call the bar manager or a person who installed the video equipment to authenticate the surveillance video (compare People v Edmonds, 165 AD3d 1494, 1497 [2018]; see generally People v Patterson, 93 NY2d 80, 84 [1999]). Accordingly, the court erred in overruling defendant's objection to this evidence. Nevertheless, in view of the overwhelming circumstantial evidence, including the DNA evidence, and because there was no significant probability that the jury would have acquitted defendant of all charges had his objection to the evidence at issue been sustained, we conclude that any error was harmless (see People v Moss, 22 AD3d 329, 330 [2005], lvs denied 6 NY3d 836, 7 NY3d 759 [2006]; People v Eckhardt, 305 AD2d 860, 864 [2003], lv denied 100 NY2d 620 [2003]; People v Pristell, 204 AD2d 801, 802 [1994], lv denied 83 NY2d 970 [1994]; see generally People v Crimmins, 36 NY2d 230, 232 [1975]).
Defendant also argues that he received the ineffective assistance of counsel. We disagree. Defendant faults his counsel for not requesting a missing witness charge after the People did not call the older brother as a witness. The record, however, does not indicate that the older brother would have offered noncumulative testimony and, therefore, his counsel cannot be deemed ineffective "for failing to pursue a missing witness charge that stood little or no chance of success" (People v Hamilton, 176 AD3d 1505, 1509 [2019] [internal quotation marks and citation omitted], lvs denied 34 NY3d 1126, 1128 [2020]). As to defendant's other grievances with his counsel, assuming, without deciding, that obtaining a cell phone number by using a fake name constituted a bad act, such evidence in the case was relevant to the issue of identity (see generally People v Agina, 18 NY3d 600, 603 [2012]). Accordingly, any failure to object to such evidence does not constitute ineffective assistance (see People Alnutt, 107 AD3d 1139, 1145 [2013], lv denied 22 NY3d 1136 [2014]). Likewise, any failure by counsel to request a limiting instruction regarding this evidence did not deprive defendant of meaningful representation (see People v Buchanan, 95 AD3d 1433, 1436-1437 [2012], lvs denied 22 NY3d 1039, 1043 [2013]). Nor do we find merit in defendant's argument that his counsel was ineffective for not objecting to the prosecutor's comments made on summation regarding the use of a fake name to obtain the cell phone (see People v Cox, 129 AD3d 1210, 1214 [2015], lv denied 26 NY3d 966 [2015]). Although the prosecutor's remark equating the use of fake names with criminality was better left unsaid, this isolated remark did not deprive defendant of a fair trial (see People v Terry, 85 AD3d 1485, 1487-1488 [2011], lv denied 17 NY3d 862 [2011]). We note that counsel made cogent opening and closing statements, offered proof in support of defendant's defense, cross-examined the People's witnesses, raised successful evidentiary objections and secured the acquittal of multiple charges in the indictment. Viewing the record in its entirety, we cannot agree with defendant's argument that his counsel was ineffective (see People v Hilton, 166 AD3d 1316, 1320-1321 [2018], lv denied 32 NY3d 1205 [2019]; People v Wright, 160 AD3d 1110, 1112 [2018], lv denied 31 NY3d 1154 [2018]).
Finally, we are unpersuaded by defendant's claim that the sentence was harsh and excessive. The record fails to disclose any abuse of discretion or extraordinary circumstances so as to warrant a modification of the sentence in the interest of justice (see People v Placido, 149 AD3d 1157, 1160-1161 [2017]; People v Callicut, 101 AD3d 1256, 1264-1265 [2012], lvs denied 20 NY3d 1096, 1097 [2013]). As such, the sentence will not be disturbed.
Garry, P.J., Egan Jr., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The homeowner's younger brother likewise testified that he recognized the gunman, but also that he did not see the face of the other male perpetrator.

Footnote 2: The record discloses that a prepaid account was used for this cell phone and, therefore, the name and address could not be verified. Upon a search of the particular name and address associated with this cell phone, no match in Kingston was found for either of them.

Footnote 3: Although County Court did not strictly comply with CPL 710.60 (6), any failure to do so was not fatal under the circumstances of this case given that the court did make an ultimate determination on the suppression motion (compare People v Youngs, 169 AD3d 1155, 1156 [2019]) and a full and fair hearing was conducted, thereby providing an ample basis for meaningful appellate review (see People v Brady, 16 NY2d 186, 188-189 [1965]; People v Pouliot, 64 AD3d 1043, 1044 [2009], lv denied 13 NY3d 838 [2009]; People v Soto, 253 AD2d 359, 359 [1998], lv denied 92 NY2d 1039 [1998]; People v Curran, 229 AD2d 794, 795 [1996], lv denied 89 NY2d 863 [1996]).