People v Bonaparte (2021 NY Slip Op 04263)





People v Bonaparte


2021 NY Slip Op 04263


Decided on July 8, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 8, 2021

111897
[*1]The People of the State of New York, Respondent,
v
Joseph L. Bonaparte, Appellant.

Calendar Date:June 2, 2021

Before:Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Kindlon Law Firm, PLLC, Albany (Lee C. Kindlon of counsel), for appellant.
Craig P. Carriero, District Attorney, Malone (Jennifer M. Hollis of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the Supreme Court (Champagne, J.), rendered April 29, 2019 in Franklin County, upon a verdict convicting defendant of the crime of assault in the second degree.
Defendant was charged by indictment with assault in the second degree after he surreptitiously put crushed pills of citalopram, an antidepressant drug, in the coffee of his then wife (hereinafter the victim). Following a jury trial, defendant was convicted as charged. Supreme Court thereafter sentenced defendant to a prison term of seven years, to be followed by three years of postrelease supervision. Defendant appeals. We affirm.
Turning first to defendant's weight of the evidence argument, the People were obligated to prove that, "[f]or a purpose other than lawful medical or therapeutic treatment, [defendant] intentionally cause[d] stupor, unconsciousness or other physical impairment or injury to [the victim] by administering to [her], without [her] consent, a drug, substance or preparation capable of producing the same" (Penal Law § 120.05 [5]). The trial evidence establishes that defendant and the victim had marital difficulties. Defendant and the victim began a period of an informal separation and, pursuant to terms of that separation that were dictated by defendant, the victim was required to take a St. John's Wort pill. In April 2016, defendant made the victim a cup of coffee, which, according to the victim, defendant rarely did. The victim testified that she then began experiencing symptoms of extreme fatigue, heart palpitations, brain fog and occasional dizziness. She specifically testified to an incident where she got into an accident after falling asleep while driving to work one morning.
The victim was suspicious and, in May 2016, recorded a video on her cell phone, which depicted defendant putting crushed pills in her coffee mug.[FN1] She subsequently went to the hospital and a blood test revealed the presence of citalopram. A pharmacist testified that citalopram is an antidepressant drug that has side effects of drowsiness and sleepiness, among others, and that a person taking it may experience heart palpitations or fall asleep at inappropriate times. The victim stated that she did not voluntarily take citalopram in April or May 2016, nor was she prescribed any medication in that time. After the victim stopped taking coffee from defendant, she no longer felt any fatigue-related ailments.
In another cell phone video recording, the victim confronted defendant about being drugged. In this recording, defendant told the victim that he was trying to get the victim to take the St. John's Wort "so [she] wouldn't . . . have to take the other thing." Defendant, for his part, testified that he did give the victim citalopram in April and May 2016 without her consent but explained that he did not intend to cause her any unconsciousness, stupor or physical impairments. According to defendant, the victim was depressed, and he was trying to help [*2]her. Defendant also acknowledged that he was not licensed to prescribe citalopram.
Initially, a contrary result would not have been unreasonable had the jury credited defendant's testimony that he did not intend to cause any form of harm or physical impairment to the victim. The jury, however, was free to reject defendant's testimony and apparently did so (see People v Colon-Velazquez, 172 AD3d 1621, 1622 [2019], lv denied 34 NY3d 929 [2019]). Defendant also assails the victim as being unworthy of belief, but nothing in her testimony rendered her incredible as a matter of law (see People v Maisonette, 192 AD3d 1325, 1327 [2021]; People v Mamadou, 172 AD3d 1524, 1525 [2019], lv denied 33 NY3d 1106 [2019]). To the extent that defendant challenges the pharmacist's testimony, defendant thoroughly cross-examined her, and the weight to be accorded to such testimony rests within the province of the jury (see People v Civitello, 287 AD2d 784, 787 [2001], lv denied 97 NY2d 703 [2002]). Deferring to the jury's credibility determinations and viewing the trial evidence in a neutral light, the verdict was not against the weight of the evidence (see People v Elmy, 117 AD3d 1183, 1186 [2014]).
Defendant asserts that Supreme Court erred in its Molineux ruling. The People sought to admit evidence concerning the history of the relationship between defendant and the victim, instances of physical and emotional abuse and controlling behavior by defendant and an assault by defendant on an individual with whom the victim was having a romantic relationship. The court correctly determined that such evidence was admissible to complete the victim's narrative and to show defendant's motive and intent and that its probative value outweighed any prejudice to defendant (see People v Doyle, 48 AD3d 961, 963-964 [2008], lv denied 10 NY3d 862 [2008]; People v Tarver, 2 AD3d 968, 969 [2003]). As such, defendant's assertion is without merit.
Defendant further argues that the prosecutor committed misconduct by eliciting testimony from the victim that either violated Supreme Court's Molineux ruling or was not contained in the People's Molineux proffer. Contrary to defendant's claim, the People did not run afoul of the court's Molineux ruling when asking the victim when she first started dating defendant. There likewise was no misconduct when the prosecutor asked the victim on direct examination what had happened when she tried to get out of her relationship with defendant. To the extent that the victim's response thereto was prejudicial, the record does not indicate that the prosecutor deliberately intended to elicit this response (see People v Garcia, 33 AD3d 1050, 1051 [2006], lv denied 9 NY3d 844 [2007]; People v McCombs, 18 AD3d 888, 890 [2005]). Furthermore, defendant's objection to the victim's response was sustained, the response was stricken and a curative instruction was given (see People v Santiago, 52 NY2d 865, 866 [1981]; People v White, 79 AD3d 1460, 1463[*3][2010], lvs denied 17 NY3d 791, 803 [2011]; People v McCombs, 18 AD3d at 890). Although the victim gave a very similar response when asked on re-direct examination why she and defendant had separate residences, Supreme Court correctly found that defendant's questioning on cross-examination opened the door for the prosecutor's inquiry (see People v Williams, 163 AD3d 1160, 1164 [2018], lvs denied 32 NY3d 1170, 1179 [2019]; People v Wright, 81 AD3d 1161, 1162 [2011], lv denied 17 NY3d 803 [2011]). Inasmuch as these instances of alleged misconduct, as well as the other complaints raised by defendant, were not so pervasive and flagrant so as to deprive him of a fair trial, reversal is not warranted on this basis (see People v Hamilton, 176 AD3d 1505, 1507 [2019], lvs denied 34 NY3d 1126, 1128 [2020]; People v Malloy, 124 AD3d 1150, 1152 [2015], lv denied 26 NY3d 969 [2015]; compare People v Levandowski, 8 AD3d 898, 900-901 [2004]).
Regarding defendant's argument that the prosecutor committed misconduct by improperly vouching for the credibility of the victim, the People do not dispute that the challenged comment by the prosecutor was erroneous. Notwithstanding the foregoing, Supreme Court instructed the jury to disregard the comment and to not consider it when assessing the credibility of the victim. In view of the court's curative instruction and the isolated nature of the remark, defendant was not deprived of a fair trial (see People v Johnson, 176 AD3d 1392, 1396 [2019], lvs denied 34 NY3d 1129, 1131 [2020]; People v Story, 81 AD3d 1168, 1169 [2011]).
Defendant contends that he was entitled to an adverse inference charge based upon the destruction of the cell phone video showing him putting the crushed citalopram in the victim's coffee. Defendant, however, neither requested an adverse inference charge nor objected to the charge as given. Accordingly, this contention is unpreserved (see People v Woodridge, 30 AD3d 898, 900 [2006], lv denied 7 NY3d 852 [2006]).
To that end, counsel was not ineffective for failing to request an adverse charge, as defendant claims, because there was little or no chance that such request would have been successful (see People v Garcia, 131 AD3d 732, 734 [2015], lv denied 27 NY3d 997 [2016]). In this regard, there is no indication in the record that the video was destroyed or lost by a government agent (see People v Wheeler, 124 AD3d 1136, 1139-1140 [2015], lv denied 25 NY3d 993 [2015]). Defendant also failed to "demonstrate the absence of strategic or other legitimate explanations for his counsel's failure to request a missing witness charge" as to a witness to whom the victim sent the cell phone recording of the victim confronting defendant (People v Rowe, 105 AD3d 1088, 1090 [2013] [internal quotation marks and citation omitted], lv denied 21 NY3d 1019 [2013]; see People v Bostic, 174 AD3d 1135, 1138 [2019], lv denied 34 NY3d 1015 [2019]).
Defendant argues that his counsel was ineffective by having him [*4]admit on re-direct examination to putting citalopram in the victim's coffee. This was not, however, "an egregious[,] self-inflicted wound," as defendant describes, inasmuch as this testimony came after the jury had already heard the cell phone recording wherein the victim confronted defendant about drugging her and the People had already cross-examined defendant about his statements therein. Counsel's decision to focus the jury's attention on more sharply contested issues — i.e., lack of intent to harm the victim and the flaws in the medical proof — can be seen as a legitimate trial strategy (see People v Tomasky, 36 AD3d 1025, 1027 [2007], lv denied 8 NY3d 927 [2007]). Furthermore, the record reflects that, immediately before defendant testified, counsel conferred with him to ensure that it was his decision to do so. Viewing counsel's representation as a whole, defendant was not deprived of meaningful representation (see People v Watson, 183 AD3d 1191, 1196 [2020], lv denied 35 NY3d 1049 [2020]; People v Pitt, 170 AD3d 1282, 1286 [2019], lv denied 33 NY3d 1072 [2019]).
Defendant asserts that Supreme Court considered improper matters when imposing the sentence. This argument, however, is unpreserved in the absence of an objection at the time of sentencing (see People v Rosado, 300 AD2d 838, 840-841 [2002], lv denied 99 NY2d 619 [2003]). Finally, the record fails to disclose any abuse of discretion or extraordinary circumstances that would warrant modifying the sentence in the interest of justice (see People v Cole, 177 AD3d 1096, 1103 [2019], lv denied 34 NY3d 1015 [2019]; People v Pitt, 170 AD3d at 1286). Defendant's remaining assertions have been considered and are unavailing.
Lynch, J.P., Clark, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The victim testified that defendant later deleted the video.