People v Warr (2025 NY Slip Op 01979)

People v Warr

2025 NY Slip Op 01979

Decided on April 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CR-22-2053
[*1]The People of the State of New York, Respondent,
v
Bryan Warr, Appellant.

Calendar Date:February 11, 2025

Before:Garry, P.J., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Sandra M. Colatosti, Albany, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Nathan M. Bloom of counsel), for respondent.

Aarons, J.
Appeal from a judgment of the County Court of Chemung County (Richard Rich Jr., J.), rendered September 6, 2022, upon a verdict convicting defendant of the crimes of burglary in the first degree, robbery in the first degree and petit larceny (three counts).
At approximately 9:15 p.m. on November 18, 2020, two men in dark clothes and ski masks entered a home on Hillbrook Road in the Town of Elmira, Chemung County, where two elderly women resided. Three healthcare workers — victims A (who also resided in the home), B and C — were also present in the home at the time of the invasion. The men ordered the healthcare workers to the floor, held a gun to victims A and B, restrained the women's hands with zip ties and placed duct tape over their mouths. The men repeatedly asked, "where's the money," and, after rummaging through the house and finding no money, forcibly removed from victim A's fingers two rings valued at approximately $1,200 and took iPhones with the iPhone cases belonging to victims B and C before leaving the scene, leaving behind a razor blade knife and a roll of duct tape. After freeing themselves from the restraints, victim C called the police.
Following a police investigation, defendant was charged in an indictment with burglary in the first degree, robbery in the first degree and three counts of petit larceny. Also charged in connection with the home invasion were a codefendant, who is defendant's brother, and Myrone Warr (hereinafter Warr), defendant's nephew. A consolidated trial with the codefendant ensued, at the conclusion of which a jury found defendant guilty of all charges. County Court sentenced defendant, as a second felony offender, to concurrent prison terms of 25 years, to be followed by five years of postrelease supervision, on his convictions of burglary and robbery and lesser periods of incarceration for the three petit larceny convictions. Defendant appeals.
Defendant contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence because the proof at trial failed to establish beyond a reasonable doubt that he was one of the perpetrators. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Cotto, 231 AD3d 1356, 1357 [3d Dept 2024] [internal quotation marks and citations omitted]; accord People v Lewis, 224 AD3d 1143, 1144 [3d Dept 2024], lv denied 42 NY3d 939 [2024]). "In conducting a weight of the evidence review, we view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if [*2]the verdict is supported by the weight of the evidence" (People v Saunders, 176 AD3d 1384, 1385-1386 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 35 NY3d 973 [2020]; see People v Bleakley, 69 NY2d 490, 495 [1987]). "As an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Montgomery, 229 AD3d 899, 901 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 972 [2024]).
As charged here, "[a] person is guilty of burglary in the first degree when he [or she] knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he [or she] or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver . . . or other firearm" (Penal Law § 140.30 [4]; see People v Montgomery, 229 AD3d at 901). "A person is guilty of robbery in the first degree when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver . . . or other firearm" (Penal Law § 160.15 [4]; see People v Montgomery, 229 AD3d at 900-901). When a person steals property, he or she is guilty of petit larceny (see Penal Law § 155.25).
At trial, the testimony of victims A, B and C established that two tall, heavy Black men wearing dark clothes and ski masks came through the front door of the house shortly after 9:00 p.m. on November 18, 2020, one of whom, described as the younger of the two, carried a gun. According to the victims, the second man appeared to be older given the way he spoke and his difficulty breathing, which victim A described as "breathing like an old person." Victim C recalled that the second man was wearing a black puffy winter jacket, two black shoes and was unable to bend one of his legs.
John Andrew Jones, an investigator with the State Police who responded to the crime scene, testified that in investigating the brand of duct tape left behind at the crime scene by the perpetrators, he discovered that it was not readily available in the Elmira area but was sold at Home Depot stores in the area of the City of Rochester, Monroe County. Upon contacting a Home Depot near Rochester, Jones received video footage depicting the codefendant, who only has one leg, purchasing duct tape and cable zip ties with a debit card belonging to his wife on the morning of the home invasion, and being accompanied by defendant. During an interview with the codefendant that was submitted into evidence, the codefendant admitted to the purchase of those items while with defendant. Video footage from outside the store showed the men leaving in a "reddish" Dodge Caravan minivan, with the codefendant driving and defendant [*3]in the passenger seat. Further investigation revealed that a gray color Dodge Caravan minivan was registered in the codefendant's name on November 10, 2020. An investigation into the debit card ultimately led to the codefendant's home address in Rochester.
Although no fingerprints were found on the duct tape, a forensic scientist with the State Police testified that an analysis of the DNA from the knife that was left by the perpetrators at the crime scene identified defendant as the "major contributor" of that DNA. Jones also testified that defendant, with whom he first had contact in June 2021, appears to have difficulty walking and does not have a smooth gait. As for the iPhones and iPhone cases taken by the perpetrators, trial testimony established that, through the use of application software installed on victims B's and C's iPhones, those iPhones were located between 12:00 a.m. and 1:00 a.m. on November 19, 2020 off I-86 near Exit 46 in the City of Corning, Steuben County, which Jones explained was on the route back to Rochester.
Jones also testified that the home next door to the crime scene had a Nest camera system that captured footage of the perpetrators during the relevant time period. As testified to at trial, the surveillance video, which is approximately 17 minutes long, depicts a minivan and a sedan — the make, model and color of which are difficult to determine — drive down Hillbrook Road and turn around, parking across the street from the camera's view. Two individuals exit the minivan, walk down the street and up the driveway of the subject residence. The sedan stays briefly, then leaves and only one perpetrator is thereafter seen being picked up by the minivan upon exiting the crime scene.
During the investigation, Jones learned that Warr was the codefendant's son and that Warr's girlfriend had a dark color sedan registered in her name. Warr was on parole at the time of the instant offense and, as a condition of parole, was wearing a GPS ankle monitor that could track Warr's movements and location. Warr's parole officer in Rochester testified that he gave permission to Warr to go to Elmira on November 18, 2020 to accompany his girlfriend, who was having foot surgery. In reviewing the GPS records from Warr's ankle monitor on the evening of November 18, 2020, the parole officer explained that the tracker placed Warr on a specific block of Hillbrook Road in Elmira at approximately 9:20 p.m., where he stayed for approximately 15 minutes before heading home to Rochester.
In addition, a nephew of the codefendant and cousin to Warr who lives in Elmira testified that Warr, the codefendant and defendant made an impromptu visit at his house on November 18, 2020 and that the three men left his house around 6:30 p.m. that evening in a "champagne-ish" or "beige-ish" color minivan. Further, the girlfriend's uncle and aunt, who live in Elmira, testified that the girlfriend and three other men made a surprise visit to their home on November [*4]18, 2020, which the GPS tracking information reflects was around 8:00 p.m., and stayed for about 30 minutes. The uncle testified that, although he did not know the men's names, he remembered the older man in the group having a limp. The aunt confirmed that Warr and the codefendant were at the house and the codefendant was missing a leg.
Viewing the foregoing evidence in the light most favorable to the People, there exists a valid line of reasoning and permissible inferences that could lead a rational juror to conclude that defendant was one of the perpetrators (see People v Watson, 183 AD3d 1191, 1193 [3d Dept 2020], lv denied 35 NY3d 1049 [2020]; People v Tunstall, 149 AD3d 1249, 1252 [3d Dept 2017], lv denied 30 NY3d 1023 [2017]). The People presented evidence from which the jury could draw the reasonable inference that defendant was in Elmira on the evening of the crime, in a minivan resembling that captured by surveillance video at the location and at the time of the crime and, further, reasonably tied defendant to the crime scene through DNA evidence and a physical description of one of the perpetrators. As such, defendant's challenge to the legal sufficiency of the evidence is without merit.
As for defendant's weight of the evidence claim, a different result would not have been unreasonable given that defendant was not positively identified as one of the perpetrators and the possibility that, according to certain expert testimony, defendant's DNA could have been transferred to the knife without him being at the crime scene. Nevertheless, viewing the evidence in a neutral light and weighing the relative probative force of conflicting testimony and the strength of conflicting inferences that may be drawn from such testimony in this circumstantial evidence case, we are satisfied that the weight of the evidence supports the jury's determination that defendant was one of the perpetrators and guilty of the crimes charged (see People v Baque, ___ NY3d ___, ___, 2024 NY Slip Op 05244, *2 [2024]; People v Watson, 183 AD3d at 1193; People v Marryshow, 162 AD3d 1313, 1317 [3d Dept 2018]).
As the People conceded, defendant's conviction of petit larceny as charged in count 3 of the indictment must be dismissed. The robbery conviction was related to the forcible stealing of two rings belonging to victim A. The petit larceny charge in count 3, which also related to the two rings being stolen from victim A, is a lesser included offense of robbery in the first degree (see CPL 1.20 [37]). As such, the petit larceny conviction on count 3 was deemed dismissed upon defendant's conviction of the greater offense (see CPL 300.40 [3] [b]). The remaining petit larceny convictions are not lesser included offenses as those charges relate to the iPhones and iPhone cases stolen, which items were not included as an element of the robbery charge.
Garry, P.J., Reynolds Fitzgerald, McShan and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing [*5]defendant's conviction on count 3 of the indictment; said count dismissed; and, as so modified, affirmed.